30 N.J. Super. 373 (1954)
104 A.2d 842
IN THE MATTER OF THE APPLICATION OF THE PEOPLE OF THE STATE OF NEW YORK FOR AN ORDER REQUIRING ONE, LOUIS B. SAPERSTEIN, TOGETHER WITH CERTAIN BOOKS AND RECORDS, TO APPEAR AS A WITNESS BEFORE THE GRAND JURY OF THE COUNTY OF NEW YORK, STATE OF NEW YORK. LOUIS B. SAPERSTEIN, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 1954.
Decided April 19, 1954.
*374 Before Judges EASTWOOD, JAYNE and CLAPP.
Mr. Maurice J. McKeown, Assistant Prosecutor of Essex County, argued the cause (Mr. Charles V. Webb, Jr., Prosecutor of Essex County, attorney).
*375 Mr. Charles W. Manning, Assistant District Attorney, County of New York, argued the cause (Mr. Frank S. Hogan, District Attorney of the County of New York, attorney; Mr. Frank Brenner, Assistant District Attorney, County of New York, of counsel), for the District Attorney of the County of New York, State of New York.
Mr. Max Mehler argued the cause for the appellant (Mr. Burton B. Turkus, of the New York Bar, on the brief).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The sole issue of this appeal is whether, under the provisions of N.J.S. 2A:81-18 et seq., a resident of this State, in addition to being directed to appear as a witness in a criminal proceeding in another State, may be required to produce books and records in his possession or under his control.
On February 25, 1954 a certificate, executed by the judge of the Court of General Sessions of the County of New York, was filed in the Essex County Court reciting that a grand jury was conducting an investigation of the insurance welfare funds of certain labor unions and of the activities of certain insurance agents doing business with the members of various labor unions located in the County of New York; that the grand jury was seeking to ascertain whether the commissions received by the said insurance agents were being or had been split with certain labor officials and other unauthorized persons, in violation of the Insurance Law of the State of New York, and whether the crime of conspiracy and bribery had been committed in connection therewith; that Louis B. Saperstein, appellant, an insurance agent residing in New Jersey, had placed contracts of insurance for members of unions in New York County and he was required as a necessary and material witness before the grand jury making that investigation and, in connection therewith, certain specified books and personal records of the appellant were necessary and material.
On February 26, 1954, after a hearing before the Essex County Court, an order was entered directing appellant, together *376 with certain of his books and records, to attend and testify before the New York grand jury commencing March 2, 1954. The appellant's application to the Essex County Court to eliminate from the order the requirement for the production of certain of his books and records, was denied.
The appellant has indicated at all times his willingness to attend and testify and his objection relates solely to the production of his books and records.
Mr. Saperstein contends that the statutory enactment relied upon does not empower a County Court to order a citizen of New Jersey to take with him his books and records before a grand jury of a sister state; that the order appealed from is unwarranted, oppressive and unconstitutional as authorizing compulsory production of self-incriminating evidence without provision for immunity or protection of the one producing it. It is further asserted that the statute is unconstitutional as being a compact between states without congressional approval, contrary to Art I, sec. 10, of the United States Constitution.
The pertinent provisions of the act known as the "Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal proceedings" (N.J.S. 2A:81-19), provides, inter alia:
"If a judge of a court of record in any state which by its laws has made provision for commanding persons within that state to attend and testify in this state certifies under the seal of such court that there is a criminal prosecution pending in such court, or that a grand jury investigation has commenced or is about to commence, that a person being within this state is a material witness in such prosecution, or grand jury investigation, and his presence will be required for a specified number of days, and that same cannot be insured voluntarily, upon presentation of such certificate to any judge of a court of record in the county in which such person is, such judge shall fix a time and place for a hearing, and shall make an order directing the witness to appear at a time and place certain for the hearing.
If at a hearing the judge determines that the witness is material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution or a grand jury investigation in the other state, and that the laws of the state in which the prosecution is pending, or grand jury investigation has *377 commenced or is about to commence (and of any other state through which the witness may be required to pass by ordinary course of travel), will give to him protection from arrest and the service of civil and criminal process, he shall issue a summons, with a copy of the certificate attached, directing the witness to attend and testify in the court where the prosecution is pending, or where a grand jury investigation has commenced or is about to commence at a time and place specified in the summons. In any such hearing the certificate shall be prima facie evidence of all the facts stated therein."
And, N.J.S. 2A:81-18 defines summons as follows:
"The word `summons' shall include a subpoena, order or other notice requiring the appearance of a witness."
We find early reference to the issuance of subpoenas in this State to compel attendance of witnesses at hearings in sister states and find a dearth of any indication that a distinction or difference of procedure is to be drawn between a subpoena to compel the attendance of a person and a subpoena duces tecum for the production of books and records by that witness. In the case of In re Edison, 68 N.J.L. 494 (Sup. Ct. 1902), the court reversed the lower court's issuance of a subpoena duces tecum because the foreign court had not required the production of records. It left open the question of whether under our statute there was authority for the issuance of a subpoena duces tecum if a foreign court requested the production of documents. However, shortly thereafter, our Court of Errors and Appeals, in In re Donald and Healy, 87 N.J.L. 691 (1915), gave sanction to the issuance of a subpoena duces tecum to produce records for an Oregon proceeding.
In the case of Davis v. Lehigh Valley Railroad Co., 97 N.J.L. 412 (Sup. Ct. 1922), the validity of a subpoena duces tecum issued by a Supreme Court Justice pursuant to a commission issued in a sister state was upheld. The court stated, at pages 413-414:
"* * * That under this statute a subpoena duces tecum might be ordered was adjudged by Mr. Justice Garrison, sitting for the Supreme Court, In re Donald & Healy, 87 N.J.L. 691, which is controlling so far as we are concerned. But in addition we approve *378 of the course taken by Justice Garrison, for the statute is remedial, and it is not limited to a subpoena ad testificandum, but applies to all witnesses and the production of all papers legally pertinent to the issue about which the witnesses may testify or identify.
The purpose of the act is to secure the testimony of witnesses not within the jurisdiction of the court issuing the commission, and that testimony includes documents, pertinent to the issue, and the word `subpoena,' as used in the statute, was any subpoena necessary to accomplish the intention of the statute. The order is not beyond the jurisdiction of the justice of the Supreme Court conferred by the act. * * * The statute is in aid of comity between sister states, and, as its purpose is to assist in the due administration of justice, it should be liberally construed."
Chief Justice Brogan, speaking for the Supreme Court in Catty v. Brockelbank, 124 N.J.L. 360 (1940), in a matter regarding the validity of a subpoena duces tecum in a discovery proceeding in aid of execution, reviewed the earlier holdings of our courts relating to other statutes of similar import, i.e., section 58 of the Evidence Act, R.S. 2:100-35, supra, and statutes concerning evidence and witnesses, R.S. 2:97, subtitle 11, and stated at page 362:
"A subpoena or, more fully, a subpoena ad testificandum is defined as a process to cause a witness to appear and give testimony, etc. 27 Amer. & Eng. Cyc. 197; 2 Bouv. Law Dict., (Rawle's Third Revision,) p. 3164. Professor Wigmore, in his work on evidence (Vol. 4, Sec. 2199), writes, `The form of document traditionally used for this purpose (to summon witnesses) is the writ of subpoena which commands the witness to appear * * *. Where the witness is desired to bring documents a specific clause to that effect is additionally required to be inserted.' And, in the following section (2200), `The form of the subpoena, when the production of documents is desired, is varied by the insertion of a special clause adapted to the purpose and requiring the witness to bring with him  duces tecum  the desired document.' * * *
Our statute law concerning evidence and witnesses  2:97 subtitle 11 , in speaking of such process, regards it rather in the generic sense without distinction or qualification whether the process be to testify or to bring records, and this court in the Davis case, supra, held that under Section 58 of the Evidence Act (now R.S. 2:100-35) a subpoena duces tecum might be ordered, relying on a decision of Mr. Justice Garrison  In re Donald and Healy. * * *.

* * * * * * * *
A subpoena ad testificandum does not lose any of its identity or its quality and become something else because there is added thereto a clause of requisition to the witness to bring in certain records in *379 his possession pertinent to `the matters involved' without which the power of process to compel his testimony might well be valueless. Text-writers seem to take the position that the term subpoena ad testificandum is a technical and descriptive name for the ordinary subpoena, 60 C.J. 689; 70 C.J. 43, sec. 22G; and that a power to compel testimony by subpoena as a general rule connotes authority to include therein a duces tecum requirement. 70 C.J. 48, Sec, 34. And it seems to me to be a sensible view. After all, the words `sub poena' looking to the meaning, certainly have no relation whatever to process. Custom and tradition have, however, made the words synonymous with process of a certain kind. It is an erroneous view to my mind to hold that subpoena duces tecum is something different and apart from subpoena ad testificandum and that the latter term does not include the former. * * *."
See also the use of the word in R.R. 4:46-2.
We note a similarity of language between the statutes in the former Evidence Act and the language of the statute in the matter sub judice. In the former it is said that the court may "make an order awarding process of subpoena * * * for such witness * * * to appear and testify * * *." (R.S. 2:100-35), and the language of the statute under review provides that if the court is satisfied as to the merit of the facts recited in the certificate of necessity presented to him and that the laws of the State will give the witness protection from arrest and service of civil and criminal process during his appearance, "he shall issue a summons * * * directing the witness to attend and testify in the court where the prosecution is pending * * *." The language of the statute in proceedings for discovery in aid of execution, provides: "witnesses may be required to appear and testify concerning the matters involved by either party, by process of subpoena ad testificandum * * *." (R.S. 2:26-153). The Davis case, supra, determined that subpoena was to be construed as "any subpoena necessary to accomplish the intention of the statute," and included subpoena duces tecum. The case of Catty v. Brockelbank, supra, similarly determined that the term "subpoena" comprehended a "subpoena duces tecum."
In view of the earlier determinations of our courts on matters concerning somewhat similar statutes and the *380 fact that the Uniform Act was enacted in aid of comity between states to assist the orderly and effectual administration of justice and prosecution of criminal conduct, we conclude that the Legislature, in enacting L. 1941, c. 88 (N.J.S. 2A:81-18 et seq.), was aware of the case law holding the term "subpoena" to embrace "subpoena duces tecum" and intended no change in that viewpoint, else it would have been made by that body.
We also conclude that the statutory protection afforded to persons during periods of appearance as a witness may likewise be afforded to property produced by that witness in answer to the subpoena duces tecum. Mr. Justice Heher, in the case of In re Cooper, 127 N.J.L. 312, 313 (Sup. Ct. 1941), considered the matter of safeguards for the protection of persons subpoenaed and found the enactment amply conditional against abuse. Under the construction we place upon the term "subpoena," i.e., to include subpoena duces tecum, we conclude that the protection as to persons are, under the statute, of necessity, implicit as to property or records under a duces tecum form of process. We think it is within the authority of the New Jersey court to prescribe such condition as may be necessary for the protection of the witness' books and records.
Counsel for the State of New York directs attention to Section 2447 of the Penal Laws of that state (L. 1953, c. 891), insuring immunity in that state to persons testifying under compulsion as to matters of a self-incriminating nature.
The constitutionality of the Uniform Act has been upheld by the Supreme Court of New Jersey in the case of In re Cooper, supra, wherein it was held that the act was not oppressive and did not unlawfully deprive an individual of his liberty.
Nor is there any merit to appellant's contention that the statute is unconstitutional as being in conflict with Art. I, Sec. 10, of the Federal Constitution, prohibiting a state from entering into any treaty, alliance, confederation, agreement or compact with another state without the consent of Congress. While the statutes are reciprocal in effect, they *381 are separate enactments of the respective states, and were not adopted in mutual consideration of each other's enactment. State of Virginia v. State of Tennessee, 148 U.S. 503, 520, 13 S.Ct. 728, 37 L.Ed. 537 (1893). Assuming arguendo, the acts do constitute an interstate compact, their validity cannot be successfully attacked, because such a compact is sanctioned under the authority of sec. 111, Title 4, of the United States Code, providing:
"The consent of Congress is hereby given to any two or more states to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements and compacts."
The order of the Essex County Court is affirmed.