APPLICATION OF A GRAND JURY OF THE STATE OF NEW YORK.

Suffolk. October 10, 1979. — December 3, 1979.

Present: GRANT, ARMSTRONG, & DREBEN, JJ.

*Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. Witness,* Subpoena, Compelling giving of evidence.

The Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings authorizes the issuance of subpoenas duces tecum. [761-768]

CIVIL ACTION commenced in the Superior Court on July 20, 1979.

The case was heard by *Keating,* J.

*Stephen A. Moore (T. Glenn Johnston* with him) for the Shawmut Bank of Boston, N.A.

*John D. Boyle,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. Pursuant to the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (see 11 Uniform Laws Annot. 1 [Master ed. 1974]), which has been adopted both by New York (N.Y. Criminal Procedure Law § 640.10 [McKinney 1971]) and by Massachusetts (G. L. c. 233,

§§ 13A-13D, inserted by St. 1937, c. 210), the district at-
torney of New York County of the State of New York
filed an application in the Superior Court for a subpoena
requiring the Shawmut Bank of Boston, N.A., to pro-
duce before a grand jury in New York City certain
records of the bank relating to one or more customers
and an employee. The judge overruled the various objec-
tions advanced by the bank and issued the requested
subpoena. The case is before us on the bank's appeal, the
hearing of which was advanced by a single justice of this
court.

The most substantial of the bank's objections concerns
the scope of the Uniform Act: namely, whether the Act
comprehends the issuance of a subpoena duces tecum or
whether, to the contrary, the authority conferred by the
Act is confined to subpoenas ad testificandum. The
bank bases its argument on certain words by which the
Act authorizes a judge to issue a "summons", which term
is defined to "include a subpoena, order or other notice
requiring the appearance of a witness in any state where
such process is used in lieu of a summons . . . directing
the witness to attend and testify in the court [of the re-
questing state] . . ." (G. L. c. 233, §13A, second par.), and on
the elaborate provisions made in the Act to compensate a
witness for travel and attendance and to protect him from
arrest or service of process while in transit or in the re-
questing State (G. L. c. 233, §13A, fourth par., and § 13C),
contrasted with the absence of any corresponding provi-
sion for defraying the expense of assembling records or
protecting those records extraterritorially.

These arguments find support in a decision of the Ap-
pellate Court of Illinois, *In re Grothe*, 59 Ill. App. 2d 1
(1965), which rejected an application by Massachusetts
under the Uniform Act to compel a Chicago bank to pro-
duce certain records before a grand jury sitting in
Boston. See also *General Motors Corp. v. State*, 357 So.
2d 1045 (Fla. App. 1978). There are, however, decisions
in other jurisdictions holding that the Uniform Act does

authorize subpoenas duces tecum. See *In re Saperstein*, 30 N.J. Super. 373 (1954); *Application of Washington*, 10 App. Div. 2d 691, appeal dismissed, 8 N.Y. 2d 865 (1960); *In re Bick*, 82 Misc. 2d 1043 (N.Y. Sup. Ct. 1975). For a Federal decision in which the same position is implicit, see *United States* v. *Monjar*, 154 F.2d 954, 956, 958-959 (1946). For a decision noting the conflict but taking no position, see *Marcus* v. *Diulus*, 242 Pa. Super. Ct. 151, 156-157 (1976).

The final section of the Act directs that it should "be so interpreted and construed as to effectuate [its] general purpose to make uniform the law of the states which enact similar laws," G. L. c. 233, § 13D, but this direction is not especially helpful in view of the conflicting decisions on the point in other jurisdictions and the paucity of States which have taken a position.

The Uniform Act makes no mention of subpoenas duces tecum or of the power of a court under the Act to order the production of documents. That silence does not necessarily imply a rejection of the power. The powers to compel the testimony of a witness and to compel the production of documents are so similar in nature and so fundamental to the gathering of evidence in judicial proceedings that one is hard put to imagine a reason for permitting the former and rejecting the latter; and one suspects that a conscious intention to differentiate between testimonial and documentary evidence would have found some concrete expression in the words of the Act, rather than mere silence. It is not inconceivable that the question of how the Act would relate to the production of documents simply never occurred to the Commissioners on Uniform State Laws. The record of their deliberations can be read as confirming such a suspicion, for we find therein no reference to the production of documents, even in passing, much less as a discrete subject of discussion. See Handbooks of the National Conference of Commissioners on Uniform State Laws for the years 1915 (at 64-65, 88), 1922 (at 118,

358-361), 1923 (at 78-180), 1924 (at 678-679), 1927 (at 915-918), 1928 (at 430-433), 1929 (at 119-123, 356, 359), 1930 (at 110-113, 575-577), 1931 (at 41-69, 120-122, 417-423), 1932 (at 41), and 1936 (at 96, 100-102, 155-158, 333-338).

The cases which have discussed the question most thoroughly are the *Saperstein* (New Jersey) and *Grothe* (Illinois) cases, which, as noted above, reached opposite conclusions. The *Saperstein* decision relied on an earlier decision, *Catty* v. *Brockelbank*, 124 N.J.L. 360 (1940), involving the construction of a statute (not the Uniform Act) which provided that ". . . witnesses may be required to appear and testify . . . by process of subpoena ad testificandum. . . ." The question for decision was whether the witness might be required under the statute to produce documents. Relying on 4 Wigmore, Evidence §§ 2199 and 2200 (3d ed. 1940), for the proposition that a subpoena to produce such documents would be only an ordinary subpoena ad testificandum "varied by the insertion of a special clause adapted to the purpose [of obtaining a document] and requiring the witness to bring with him − duces tecum − the desired document", the court went on to hold:

> "A *subpoena ad testificandum* does not lose any of its identity or its quality and become something else because there is added thereto a clause of requisition to the witness to bring in certain records in his possession pertinent to "the matters involved" without which the power of process to complete his testimony might well be valueless. Text-writers seem to take the position that the term *subpoena ad testificandum* is a technical and descriptive name for the ordinary subpoena . . . and that a power to compel testimony by subpoena as a general rule connotes authority to include therein a *duces tecum* requirement. . . . And it seems to me to be a sensible view. After all, the words 'sub poena' looking to the meaning, certainly

have no relation whatever to process. Custom and tradition have, however, made the words synonymous with process of a certain kind. It is an erroneous view to my mind to hold that *subpoena duces tecum* is something different and apart from *subpoena ad testificandum* and that the latter term does not include the former." 124 N.J.L. at 363.

In the *Saperstein* decision the New Jersey Superior Court, following the principle of *Catty* v. *Brockelbank,* interpreted the Uniform Act to include the power to compel the production of documents before courts of other States.

*Catty* v. *Brockelbank* has been widely cited and followed. For other cases holding that a general power to subpoena witnesses includes the power to subpoena documents, see *In re Hawkins,* 121 A.2d 486 (Del. Super.), affd., 123 A.2d 113 (1956); *Marston's, Inc.* v. *Strand,* 114 Ariz. 260, 263 (1977); *Southwestern Bell Telephone Co.* v. *Miller,* 2 Kan. App. 558 (1978); *State ex rel. Pollard* v. *Marion Crim. Ct.,* 263 Ind. 236 (1975). The principle applied in those cases seems to us to have particular relevance to Massachusetts, for our general statutory laws authorizing courts to compel the production of evidence (namely, G. L. c. 233, §§ 1-11; c. 218, § 37; c. 277, § 68) make no explicit provision for the production of papers, but only for the summoning of witnesses. It is not until the adoption of Mass.R. Civ.P. 45(b), 365 Mass. 809 (1974), and Mass.R.Crim.P. 17(a)(2), 378 Mass. 885 (1979), that we find specific, separate, general authorization for courts to issue subpoenas duces tecum; but the power of our courts to issue such subpoenas has never been doubted.

The decision of the Appellate Court of Illinois in *In re Grothe,* which, as mentioned earlier, is the leading case holding that the Uniform Act does not authorize subpoenas duces tecum, does not directly controvert the reasoning of the *Catty* and *Saperstein* decisions which

we have described. Rather, the *Grothe* case proceeds from an assumption, said to be agreed upon by the parties, that "the extent to which the application of this act can impinge upon the personal affairs and liberties of an individual requires strict construction of the [Act]." 59 Ill. App. 2d at 5. Because the Uniform Act is reasonably susceptible of either a broad construction, allowing subpoenas duces tecum, or a restrictive construction, disallowing such subpoenas, that assumption was determinative of the case. The New Jersey decision, *In re Saperstein,* followed the opposite general approach: it quoted with approval from an earlier New Jersey decision, *Davis* v. *Lehigh Valley R.R.,* 97 N.J.L. 412, 414 (1922): "The statute is in aid of comity between sister states and as its purpose is to assist in the due administration of justice it should be liberally construed." The New Jersey approach seems to us to fit better with the view of the United States Supreme Court, which, in upholding the Uniform Act against constitutional attack, cited "the obvious policy and necessity of [the Uniform Act] to preserve harmony between States, and order and law within their respective borders . . . ." *New York* v. *O'Neill,* 359 U.S. 1, 5 (1959), quoting from *Kentucky* v. *Dennison,* 65 U.S. (24 How.) 66, 103 (1860). "Comity among States," the 1959 opinion said, "[is] an end particularly to be cherished when the object is enforcement of internal criminal laws . . . ." 359 U.S. at 11-12.

To the extent that the *Grothe* opinion's strict-construction approach rested on an agreement or stipulation of the parties, it is inapplicable to the present case, in which we have no such stipulation. The *Grothe* opinion also cites as support for restrictive construction an opinion by a judge of a lower court in New York: *In the Matter of Mayers,* 9 Misc. 2d 212 (N.Y., N.Y. County Ct. 1957);[1] but

---

[1] The *Mayers* decision denied a request by California for a subpoena to compel testimony by a New York resident. The decision seemed to turn on testimony of an assistant attorney general representing California to

in light of the later decisions of New York's higher courts
siding with the *Saperstein* case on the precise point in is-
sue, the *Mayers* decision is entitled in this connection to
little, if any, weight.

On general principle we see little justification for a
strict-construction approach. So long as fair allowance
is made to compensate for the expense to which a wit-
ness is put, the interstate process issued under the auth-
ority of the Uniform Act does not seem to us to "impinge
upon the personal affairs and liberties of an individual"
(*In re Grothe,* 59 Ill. App. 2d at 5) more significantly
than does process to obtain testimony in judicial pro-
ceedings within a State, participation in which is com-
monly assumed to be a privilege as well as a duty of
citizenship; and while the subpoena or summons envi-
sioned by the Act is ancillary to an underlying criminal
proceeding, that proceeding is not directed against one
called merely to give testimony as a witness.

There is, of course, another sense in which the Uniform
Act could be considered criminal in nature: namely, that
subpoenas issued under the authority of the Act carry
with them the same sanctions as in-State subpoenas (see,
e.g., G. L. c. 233, § 13A, fourth par.), and those sanctions

---

the effect that "the prospective witness would become a defendant if
the facts should warrant it." 9 Misc. 2d at 213. The court said that
this testimony raised "a serious preliminary question . . . as to
whether the witness is solely a witness or the statute is in reality be-
ing used for the purpose of effectuating the return of the witness in
order to make him a defendant instead." *Ibid.* The holding, stated to
be "confined solely . . . to the question of good faith underlying this
proceeding," was to the effect that "[the Act] ought not to be used
against any person unless that person is slated strictly as a statutory
witness." *Ibid.* It should be noted that § 4 of the Act, which Califor-
nia adopted in 1937, provides in part that "[i]f a person comes into
this state in obedience to a summons directing him to attend and
testify in this state he shall not while in this state pursuant to such
summons be subject to arrest or the service of process, civil or
criminal, in connection with matters which arise before his entrance
into this state under the summons." 11 Uniform Laws Annot. at 28.
See G. L. c. 233, § 13C.

include fine or imprisonment for the contempt of court (see G. L. c. 233, § 5) implicit in their violation. But we think that a distinction must be drawn at this point: the fine or imprisonment is authorized not for a violation of the Act, which by itself does not require any person to give testimony or produce records, but rather for a violation of the court order issued under the authority of the Act. That distinction is more than idle hair splitting: failure to recognize it would cast doubt on the validity of all subpoenas duces tecum issued by our courts prior to the recent adoption of the Massachusetts rules of civil and criminal procedure, because, as mentioned earlier, the general statutes authorizing process to obtain evidence refer only to the summoning of witnesses and not to the production of documents. The Uniform Act stands on at least an equal footing; we are disinclined to give a restrictive or niggardly construction to an authority conferred on the courts for the salutary purpose of "preserv[ing] harmony between the States, and order and law within their respective borders . . . ." *New York* v. *O'Neill,* 359 U.S. at 5. This is not to say that the principle of narrow construction is without application: it would, of course, apply to orders issued under the authority of the Act; so that, if a witness should be cited for contempt for failure to comply with the terms of an ambiguous subpoena, the mandate of that subpoena should, in accordance with the usual principle, be confined to its narrowest reasonable construction.

We conclude, therefore, that the Uniform Act should be interpreted to authorize the issuance of subpoenas duces tecum, following in that respect the States of New Jersey and New York. It is perhaps worth mention that after the decision in the *Grothe* case the Legislature of Illinois amended the definition of "summons" in its enactment of the Uniform Act so as to include subpoenas duces tecum, see 1965 Ill. Laws at 2694, § 1, effective

August 6, 1965, thus bringing Illinois law in line with New Jersey and New York in this respect.[2,3]

Most of the other contentions raised by the bank are without merit. The misnomer of the corporate entity appearing in the New York application ("National Shawmut Bank") was not ground for avoidance of the subpoena. Process was properly served on the bank; there was no confusion as to the intended recipient; and no prejudice resulted from the misnomer. The evidence and representations of counsel before the court fully justified the judge's findings that the documents sought to be subpoenaed were material and necessary (see n.3) to an ongoing grand jury investigation in New York. The bank's contention concerning the effect of 12 U.S.C. § 94 (1976) is not properly before us because it was not raised in the Superior Court. *Milton* v. *Civil Serv. Commn.,* 365 Mass. 368, 379 (1974). *John B. Deary, Inc.* v. *Crane,* 4 Mass. App. Ct. 719, 724 (1976).

There is, however, one respect in which the order entered in the court below should be amended. The bank represented that the papers requisitioned would require thirty to sixty days of labor to assemble by a process of random search through microfilm records in a storage warehouse, and it requested that any order for their production be conditioned on payment by the applicant of

---

[2] With the possible exception of Florida (there is a dictum in *General Motors Corp.* v. *Florida,* 357 So. 2d 1045, 1047 [Fla. App. 1978], stating that "[t]he Uniform Law does not, as it presently reads, apply to requests solely for the production of documents"), none of the thirty-nine jurisdictions which have adopted the Uniform Act, so far as we have discovered, presently interprets its enactment of the Uniform Act to preclude the issuance of subpoenas duces tecum.

[3] We should also mention that we do not doubt the correctness of the appellate court's ultimate disposition of the *Grothe* case. The decision had an alternative basis, that Massachusetts had failed to show that the material sought to be subpoenaed was material and necessary to the investigation being conducted by the grand jury in Boston. Such a finding is a precondition to the issuance of a subpoena under § 2, second par., of the Uniform Act (G. L. c. 233, § 13A, second par.).

the reasonable costs incurred. There is no good reason why the order for production of records should not be so conditioned. Section 2 of the Uniform Act (G. L. c. 233, § 13A, second par.) requires the court, before it issues a subpoena, to find that "it will not cause undue hardship" to the person against whom the subpoena runs. Where substantial expense will be involved in the production of records, it is not unusual for a court, on seasonable application, to make provision for reimbursement of expenses reasonably incurred, see Mass.R.Civ.P. 45(b)(2), 365 Mass. 810 (1974), and the making of such provision may in some cases be a precondition to the making of the statutorily required finding. Such provision should be made in this case; its terms should be the subject of further proceedings in the Superior Court.

The order in its present form is therefore vacated, and the case is remanded to the Superior Court for further proceedings to determine an appropriate condition or conditions for reimbursing the bank for expenses reasonably incurred by it in complying with the terms of the subpoena sought by the applicant.

*So ordered.*