PARIENTE, J.
The certified conflict presented in this case requires us to consider whether, in a criminal case, subpoenas can be served on an out-of-state corporation’s registered agent in Florida to require that out-of-state, nonparty corporation to produce documents or materials located out-of-state, without utilizing the provisions of chapter 942, Florida Statutes. Chapter 942, the Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings (Uniform Law), provides a statutory process by which parties can subpoena out-of-state, nonparty witnesses. See § 942.06, Fla. Stat. (2010). In this case, after certain Florida criminal defendants were charged with driving under the influence (DUI), they sought the computer source codes of the breathalyzer equipment manufactured by CMI, Inc., a Kentucky-based corporation, by serving CMI’s registered agent in Florida, even though this source code material was not located in Florida.
In CMI, Inc. v. Ulloa, 73 So.3d 787, 791 (Fla. 5th DCA 2011), the Fifth District Court of Appeal held that criminal defendants must follow the procedures set forth in the Uniform Law when requesting this material from out-of-state, nonparty witnesses and that service on CMI’s regis *916 tered agent was insufficient to compel CMI to produce the source codes. The court then certified conflict between its decision and decisions of the Second District Court of Appeal in CMI, Inc. v. Landrum, 64 So.3d 693 (Fla. 2d DCA 2010), and the Third District Court of Appeal in General Motors Corp. v. State, 357 So.2d 1045 (Fla. 3d DCA 1978).[1]
For the reasons that follow, we conclude that in criminal cases, in order to subpoena documents located in another state that are in the possession of an out-of-state nonparty, the party requesting the documents must utilize the procedures of the Uniform Law, as set forth in chapter 942. While the designation by an out-of-state corporation of a registered agent in Florida has many legal ramifications, as set forth in chapter 607 of the Florida Statutes, that designation does not allow for service of subpoenas on a registered agent to compel production in this state of out-of-state documents belonging to an out-of-state, nonparty corporation in connection with a criminal case, beyond that set forth in the Uniform Law. We reach this conclusion based on our determination that the subpoena power to compel the production of out-of-state documents belonging to out-of-state nonparty witnesses in a criminal case derives from the same source as the power to compel the attendance of out-of-state, nonparty witnesses — the Uniform Law. Accordingly, we disapprove the conflict cases of General Motors and Landrum to the extent that they conflict with our decision, and we approve the Fifth District’s decision below.
FACTS
This case stems from numerous county court cases involving defendants being prosecuted for DUI. Ulloa, 73 So.3d at 788. In each case, the police administered breathalyzer tests to each of the DUI defendants using the Intoxilyzer 8000, a machine manufactured by CMI, a Kentucky-based corporation. Id. The defendants sought to suppress the results of the breathalyzer tests, and to this end, they served a subpoena duces tecum on CMI’s registered agent in Florida, seeking the computer source codes for the software version used in the current Intoxilyzer 8000 instruments. The defendants alleged that the computer source codes would provide information on the accuracy of the machine’s readings. Most of the defendants also sought to have out-of-state CMI employees testify in the Florida criminal proceedings, in addition to requiring CMI to produce the source codes. However, three of the defendants (Alejandro Ulloa, Eric Jackson, and Bradley Leonard) sought only the source codes and did not seek the testimony of out-of-state CMI employees.
As to these three defendants, the subpoena that was issued in Jackson’s DUI case commanded CMI’s custodian of records, in care of NRAI Services, Inc. (CMI’s designated registered agent), to appear at the offices of issuing counsel and to bring with him all source codes for the Intoxilyzer 8000 software, version 8100.27. The second subpoena, issued in Leonard’s DUI case, also commanded CMI’s custodian of records, under penalty of contempt, to produce the source codes. The third subpoena, issued in Ulloa’s DUI case, commanded CMI’s records custodian to appear at the offices of the issuing attorney with the source codes or alternatively to mail or deliver the copies in lieu of appearance. All three subpoenas contained a statement that threatened the records custodian for CMI with contempt of court for failing to produce the materials or failing to appear *917 at the issuing attorneys’ offices with the requested materials.
CMI subsequently filed motions to quash the subpoenas duces tecum, including both those subpoenas that sought to have out-of-state CMI employees testify in the Florida proceedings and produce the source codes and those subpoenas that required CMI only to produce the source codes. In support of its motion, CMI argued that because CMI had no offices, employees, or documents in Florida,[2] the DUI defendants should have been required to follow the procedures of the Uniform Law in order to compel the production of this material. In its motions to quash, CMI raised the following legal arguments: (1) a Florida trial court lacks subpoena power over nonparty witnesses located outside of Florida; (2) in the absence of this subpoena power, a criminal defendant must use the mechanisms afforded by the Uniform Law, a law that was enacted specifically to address a trial court’s lack of extra-territorial subpoena power; (8) Florida’s service of process statutes in chapter 48, Florida Statutes, do not provide for service of a nonparty, out-of-state witness subpoena on an out-of-state corporation’s registered agent; (4) the Legislature intended for the Uniform Law to be interpreted in accordance with jurisprudence from other enacting jurisdictions so as to maintain uniformity in the law; and (5) the Florida Rules of Criminal Procedure do not contemplate the issuance of a discovery subpoena solely for production of documents. The county court denied CMI’s motions to quash.
CMI filed a petition for a writ of certio-rari with the circuit court, challenging the denials of the motions to quash. The circuit court consolidated all of the cases for purposes of appeal, as the cases raised similar legal issues. The court then reviewed the Second District’s decision in Landrum, 64 So.3d at 694-95, which held that the Uniform Law applies to subpoenas that request testimony or that request both testimony and the production of documents, but does not apply to subpoenas served on a registered agent in Florida that request only the production of documents. Accordingly, the circuit court held that, with regard to those cases in' which the DUI defendants requested both the testimony of a witness and the production of documents, the Uniform Law was applicable and the essential requirements of law had not been observed by issding the subpoena duces tecum without following the procedures of the Uniform Law. However, with regard to Ulloa, Jackson, and Leonard, who requested only the production of the source codes, the circuit court held that the Uniform Law did not apply and that the county court correctly applied the law in denying CMI’s motions to quash.
CMI then sought second-tier certiorari review pertaining to the portion of the order that required CMI to produce the source codes in Florida. The Fifth District, after reviewing the applicable statutory law and case law, concluded that the *918 “only way to secure ... out-of-state witnesses or documents in a criminal case is to follow the procedures of the Uniform Law.” Ulloa, 73 So.3d at 790-91. Accordingly, the Fifth District quashed the portion of the circuit court’s order that denied the petition for a writ of certiorari with respect to Ulloa, Jackson, and Leonard, and certified that its decision conflicts with the decisions in Landrum and General Motors. Ulloa, 73 So.3d at 791.
ANALYSIS
At the outset, we note that the defendants have not asserted that they are unable to obtain the materials requested by following the procedures in the Uniform Law. Therefore, we do not address any purported constitutional argument that our interpretation of the Uniform Law in this case in any way interferes with the defendants’ Sixth Amendment right to compulsory process for obtaining witnesses in their defense. See Pennsylvania v. Ritchie, 480 U.S. 39, 56, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (“[Criminal defendants have the right to the government’s assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt.”). Nor is it necessary for us to determine whether the materials sought in this case would be admissible.
The petitioners also do not claim that the source codes are actually in the possession of the registered agent or otherwise located in Florida.[3] Similarly, CMI does not dispute the petitioners’ right to subpoena evidence from CMI, if the proper procedure is followed. Rather, the issue, distilled to its basics, is the legal validity of a subpoena served on an out-of-state corporation’s registered agent in Florida to obtain documents or materials from a non-party where those items are located out-of-state. The certified conflict presented in this ease, therefore, requires us to determine whether the designation of a registered agent in Florida expands the court’s subpoena power in criminal cases so as to require an out-of-state, nonparty corporation to produce documents or materials in this state that are located outside of the state.
In Landrum, 64 So.3d at 695, the Second District held that because the Uniform Law does not apply to a subpoena duces tecum seeking only the production of documents from the registered agent of an out-of-state, nonparty corporation, the circuit court in that case properly found that CMI was subject to the court’s subpoena power. In Ulloa, 73 So.3d at 790, the Fifth District expressly disagreed, holding that “the subpoena power of a Florida court over a person or legal entity which is not a party in a lawsuit does not extend beyond state lines.”
In order to resolve this conflict, we first address the difference between service of process, personal jurisdiction, and a court’s subpoena power — concepts that are necessary to distinguish and understand before resolving the question before us. Next, we review the provisions of Florida’s Uniform Law and determine whether the procedures of the Uniform Law apply when the subpoena involved is a subpoena duces tecum seeking to have a witness only produce documents, as opposed to one also compelling testimony. Finally, we review the decisions of other states that have adopted the Uniform Law to ensure that our interpretation is consistent with those *919 of other states. After analyzing the above, we conclude that the procedures of the Uniform Law apply even when the subpoena involved is a subpoena duces tecum seeking to have a witness only produce documents.
I. Difference Between Service of Process, Personal Jurisdiction, and Subpoena Power
In Landrum, the Second District held that the defendant could serve a subpoena duces tecum seeking only the production of documents on an out-of-state, nonparty corporation because that corporation “has a registered agent in Florida and ... does business in Florida by selling its In-toxilyzer 8000 to law enforcement agencies.” Landrum, 64 So.3d at 694. CMI contends that the reasoning of the Second District conflates the concepts of personal jurisdiction and a court’s subpoena power. Further, CMI argues that at the heart of this matter is a question relating to fundamental principles of federalism and comity: “[W]hether a Florida trial court may lawfully, through use of a litigant’s witness subpoena duces tecum, reach into a sister state and command that a corporate resident of that state deliver ... valuable corporate assets into Florida for use in ongoing criminal proceedings to which the corporate witness is not a party.”
We begin by first reviewing service of process and the various statutes that the defendants assert authorize the issuance of a subpoena duces tecum for documents located outside of this state by serving the subpoena on the out-of-state corporation’s registered agent. Section 48.091(1), Florida Statutes (2010), requires that every foreign corporation that transacts business in Florida “shall designate a registered agent and registered office in accordance with chapter 607.” In addition, section 48.081(3)(a) permits that “process may be served on the agent designated by the corporation under s. 48.091.” § 48.081(3)(a), Fla. Stat. (2010); see also § 48.181(2), Fla. Stat. (2010) (“If a foreign corporation has a resident agent or officer in the state, process shall be served on the resident agent or officer.”). Pursuant to section 607.15101(1), Florida Statutes (2010), “[t]he registered agent of a foreign corporation authorized to transact business in this state is the corporation’s agent for service of process, notice, or demand required or permitted by law to be served on the foreign corporation.”
These provisions, however, are directed only to service of process, simply requiring an out-of-state corporation doing business in this state to have a designated person or entity authorized to accept the delivery of a summons, complaint, subpoena, notice, or other legal notification on behalf of the corporation. This case does not involve a defect in service of process.
Service of process is a different but related legal concept from personal jurisdiction. In Borden v. East-European Insurance Co., 921 So.2d 587 (Fla.2006), this Court articulated the differences between service of process and personal jurisdiction as follows:
Under Florida law, service of process and personal jurisdiction are two distinct but related concepts. Both are necessary before a defendant, either an individual or business entity, may be compelled to answer a claim brought in a court of law. Personal jurisdiction refers to whether the actions of an individual or business entity as set forth in the applicable statutes permit the court to exercise jurisdiction in a lawsuit brought against the individual or business entity in this state. See generally § 48.193; White v. Pepsico, Inc., 568 So.2d 886 (Fla.1990); Venetian Salami Co. v. Parthenais, 554 So.2d 499, 500 (Fla.1989) (stating that in order to subject a defen *920 dant to personal jurisdiction, “due process requires that the defendant have certain minimum contacts with the forum”). Service of process is the means of notifying a party of a legal claim and, when accomplished, enables the court to exercise jurisdiction over the defendant and proceed to judgment. See Shurman v. Atlantic Mortg. & Inv. Corp., 795 So.2d 952, 953 (Fla.2001) (“It is well settled that the fundamental purpose of service [of process] is ‘to give proper notice to the defendant in the case that he is answerable to the claim of plaintiff and, therefore, to vest jurisdiction in the court entertaining the controversy.’ ”) (quoting State ex rel. Merritt v. Heffernan, 142 Fla. 496, 195 So. 145, 147 (1940)). Personal jurisdiction over a nonresident of the state is circumscribed by constitutional considerations of minimum contacts as stated in the seminal case of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny.
Id. at 591-92 (footnote omitted).
This case clearly does not involve personal jurisdiction because CMI is not a party to the action. Moreover, the provisions of chapter 48, related to service of process, do not address the limitations of a court’s subpoena power and whether the subpoena itself is valid.
We agree with the Fifth District’s reasoning on this point:
Designating an agent for service of process subjects a foreign corporation to the jurisdiction of the Florida court to adjudicate its rights and obligations in a legal dispute. See generally § 48.091, Fla. Stat. (2010). The registered agent has a limited role, and is not a corporate employee or custodian of corporate records. CMI is not involved in a legal dispute. Even if CMI is subject to the personal jurisdiction of Florida courts under the long-arm statute, this does not mean that CMI is required to respond to a subpoena to appear and/or to produce documents in a Florida court in a criminal case in which it is not a party. Unlike personal jurisdiction over a foreign corporation registered and doing business within the State of Florida, the subpoena power of a Florida court over a person or legal entity which is not a party in a lawsuit does not extend beyond state lines. See § 914.001(1), Fla. Stat. (2010). The long-arm statute does not extend the subpoena power of a Florida court to command the in-state attendance of a non-resident, non-party person or entity, or compel that person or entity to produce documents.
Ulloa, 73 So.3d at 790 (footnote omitted). As the Fifth District further observed, “even if CMI is doing business in another state and has a registered agent, it does not mean that it is located within that state and subject to a criminal court’s contempt power for failing to respond to a subpoena duces tecum from that state.” Id. at 791. We conclude that, standing alone, chapter 48 does not address or extend the court’s subpoena power in a criminal proceeding to require an out-of-state, nonparty corporation to produce documents that are also located out-of-state. Thus, we must turn to the statutory authority that addresses the issuance of subpoenas for witnesses and documents in criminal cases.
II. Florida’s Uniform Law and the Authority to Subpoena Out-of-State, Nonparty Witnesses in Criminal Proceedings
We next address various statutory provisions pertaining to the issuance of subpoenas and the limits on a trial court’s subpoena power over documents and materials belonging to an out-of-state, non-party witness that are located outside of *921 the state. Pursuant to section 914.001(1), Florida Statutes (2010), a subpoena for a witness in a criminal case “shall run throughout the state and be directed to all of the sheriffs of the state.” (Emphasis added.) Nothing within this provision extends a court’s subpoena power beyond the state boundaries. See Harrell v. State, 709 So.2d 1364, 1369 (Fla.1998) (recognizing the limits of the subpoena power of Florida courts).
For the issuance of subpoenas to witnesses located outside of the state, Florida’s Uniform Law sets forth the requirements for obtaining the testimony of an out-of-state witness in a criminal case. The Uniform Law provides a mechanism by which states can provide for reciprocal agreements, whereby the sister state courts will act cooperatively to ensure that materials and necessary witnesses in criminal proceedings can be compelled to testify in another state.
The purpose of the Uniform Law was explained by the Ünited States Supreme Court in a case involving Florida’s Uniform Law as follows:
The primary purpose of this Act is not eleemosynary. It serves a self-protective function for each of the enacting States. By enacting this law the Florida Legislature authorized and enabled Florida courts to employ the procedures of other jurisdictions for the obtaining of witnesses needed in criminal proceedings in Florida. Today forty-two States and Puerto Rico may facilitate criminal proceedings, otherwise impeded by the unavailability of material witnesses, by utilizing the machinery of this reciprocal legislation to obtain such witnesses from without their boundaries. This is not a merely altruistic, disinterested enactment.
New York v. O’Neill, 359 U.S. 1, 9, 79 S.Ct. 564, 3 L.Ed.2d 585 (1959). The Uniform Law has now been adopted by all fifty states. See Harrell, 709 So.2d at 1369 n. 5. As recently explained by the Georgia Supreme Court:
The Uniform Act to Secure the Attendance of Witnesses from Without the State in- Criminal Proceedings, approved by the National Conference of Commissioners on Uniform State Laws in 1931 and amended in 1936, “is intended to provide a means for state courts to compel the attendance of out-of-state witnesses at criminal proceedings.” Availability under Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings of Subpoena Duces Tecum, 7 A.L.R.4th 836, § 1. Relying on the principles of comity in the absence of unilateral power to compel the appearance of a witness located out of state, the Uniform Act has been enacted by all fifty states. Stud-nicki and Apol, Witness Detention and Intimidation: The History and Future of Material Witness Law, 76 St. John’s L.Rev. 483, 532 (2002); Wasserman, The Subpoena Power: Pennoyer's Last Vestige, 74 Minn. L.Rev. 37, 88 (1989).
Yeary v. State, 289 Ga. 394, 711 S.E.2d 694, 696 (2011).
Specifically, section 942.03 of Florida’s Uniform Law provides the authority for a witness from another state to be summoned to testify in this state. Pursuant to section 942.03(1), in order to summon an out-of-state witness to appear and testify in a criminal prosecution or grand jury proceeding in this state, the Florida judge must issue a certificate under the seal of the court and assert that the out-of-state individual is a “material witness” in a pending Florida prosecution. § 942.03(1), Fla. Stat. (2010). The judge must also specify the number of days that the witness will be required to appear in Florida. Id. This certificate then must be presented *922 to a judge in the county and state in which the witness is found. Id.
As this is a reciprocal law, section 942.02 provides the procedures for a Florida court to follow if it receives a certifícate from a sister state that an individual located in Florida is needed to testify in another state and, likewise, what a sister state would do if it receives a certificate from a Florida court. If a Florida judge receives a certificate from a sister state court asserting that a person in Florida is a material witness in that state, the Florida judge must set a time and place for a hearing in Florida and direct the witness to appear for such a hearing. § 942.02(1), Fla. Stat. (2010). The witness is entitled to counsel for this hearing. Id. The Florida judge will then determine whether the witness is indeed material and necessary in that sister state and will also determine whether the witness will suffer undue hardship if compelled to appear and testify in the sister state. § 942.02(2), Fla. Stat. (2010). If the Florida judge determines that the witness is material and necessary and that no hardship would occur by requiring the witness to travel to another state to testify, the Florida judge will issue a summons to the Florida witness, directing the witness to appear and testify in that sister state court. Id. Further, the Florida judge can recommend that the witness be taken into custody and delivered to an officer of the requesting state to ensure the witness’s attendance. See § 942.02(3), Fla. Stat. (2010). If the witness fails to attend as ordered, the Florida court is authorized to sanction the witness. § -942.02(4), Fla. Stat. (2010).
A review of the Uniform Law as a whole shows that in order for a Florida court to require the attendance of an out-of-state witness to appear to testify in a Florida criminal proceeding, the Florida court cannot actually compel the out-of-state witness to take any action and cannot impose sanctions against the out-of-state witness for failing to obey. Instead, under section 942.03(1), the Florida court merely issues a certificate to the sister state court where the witness is located, so that the sister state can make certain findings and issue a summons to the witness who is appearing before that court. The sister state court then has the authority to impose sanctions if the witness does not comply. In other words, the same process that takes place in Florida when a Florida court receives a certificate from a sister state would then take place in that other state.
Accordingly, this process requires two courts to work together, with both courts finding that the witness in question is material and necessary. The witness also has an opportunity to be heard, and the sister state can ensure that the witness endures no undue hardship. This process guarantees that both sovereign states are coordinating their efforts, that the witness has the opportunity to be heard by his or her own state court, and that the witness does not need to travel to another state unless his or her own state’s court has also determined that he or she is material and necessary to the case.
Finally, section 942.05 provides as follows:
This chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the law-of the states which enact it, and shall be only applicable to such state as shall enact reciprocal powers to this state relative to the matter of securing attendance of witnesses as herein provided.
§ 942.05, Fla. Stat. (2010). In other words, the very concept of the Uniform Law is that it requires states to act cooperatively in securing the attendance of out-of-state witnesses. A complete understanding of this statutory scheme further *923 supports the conclusion that the Legislature intended parties to use only the Uniform Law to subpoena witnesses that are located out-of-state, rather than permitting litigants to circumvent the law by utilizing the registered agent for service of process.
While the Uniform Law clearly applies to subpoenas requiring an out-of-state witness to testify, the legal question in this case is specifically whether the procedures of the Uniform Law apply when the subpoena involved is a subpoena duces tecum seeking to compel a witness to only produce documents or materials, as opposed to also compelling testimony. Black’s Law Dictionary defines the verb “subpoena” as “[t]o order the production of (documents or other things) by subpoena duces tecum” and defines a “subpoena duces tecum” as a “subpoena ordering the witness to appear in court and to bring specified documents, records, or things.” Black’s Law Dictionary 1568 (9th ed. 2009). In other words, requiring the presence of a witness to produce the documents is part of the issuance of a subpoena. The subpoena is therefore the mechanism that authorizes the production of witnesses or documents from nonparties.
Determining that the Uniform Law applies to both witnesses and documents is consistent with the way that the majority of other states interpret the Uniform Law. This Court has recognized that in interpreting “a statute modeled after a uniform law, ‘it is pertinent to resort to the holdings in other jurisdictions where the act is in force.’ ” State v. Mancuso, 652 So.2d 370, 371 (Fla.1995) (quoting Valentine v. Hayes, 102 Fla. 157, 135 So. 538, 540 (1931)).
The majority of courts have held that under the Uniform Law, a court can request the issuance of a subpoena duces tecum in conjunction with the appearance of a person and can require the person to produce documents or materials. See, e.g., Ex parte Simmons, 668 So.2d 901, 903 (Ala.Crim.App.1995); Application of Grand Jury of State of New York, 8 Mass.App.Ct. 760, 397 N.E.2d 686, 691 (1979); In re Saperstein, 30 N.J.Super. 373, 104 A.2d 842, 846 (App.Div.1954); In re Bick, 82 Misc.2d 1043, 372 N.Y.S.2d 447, 449 (N.Y.Sup.Ct.1975); State v. Harman, 165 W.Va. 494, 270 S.E.2d 146, 153-54 (1980). As thoroughly explained by the Nevada Supreme Court:
The issue arises because the Uniform Act speaks in terms of an out-of-state witness receiving a “summons”.... A minority of courts have read the reference to “requiring the appearance of a witness” as limiting “subpoena” to subpoenas for testimony not documents, reasoning that, had the Legislature intended to include subpoenas duces te-cum, it would have drafted the statute to include them....
On the other hand, courts that construe the Uniform Act liberally, which represent the majority view, have concluded that it is reasonable to afford protection to reach documents as well as witnesses, reasoning that the term “subpoena” can include documents. See, e.g., Application of Grand Jury of State of N.Y., 8 Mass.App.Ct. 760, 397 N.E.2d 686, 689 (1979) (reasoning that the meaning of the term “ ‘subpoena’ ... certainly ha[s] no relation whatever to process [but that] [c]ustom and tradition have, however, made the words synonymous with process of a certain kind” and that it would be irrational to conclude that the term excludes either subpoena duces tecum or subpoena ad testifican-dum); In re Saperstein, 30 N.J.Super. 373, 104 A.2d 842, 846 (App.Div.1954) (“In view of ... the fact that the uni *924 form act was enacted in aid of comity between states to assist the orderly and effectual administration of justice and prosecution of criminal conduct, we conclude that the Legislature ... was aware of the case law holding the term ‘subpoena’ to embrace ‘subpoena duces tecum’ ” and had it intended to exclude such subpoenas' from the act, it would have done so.)
[[Image here]]
Remaining in line with the majority of jurisdictions, we reiterate that Nevada’s Uniform Act extends to subpoenas duces tecum. Like the appeals court of Massachusetts, we are convinced that the term “subpoena,” as used in NRS 174.405(2), includes subpoenas duces tecum. While NRS 174.425 sets forth the procedures by which a citizen of Nevada can “summon” a witness from another jurisdiction to testify in a criminal proceeding, NRS 174.405(2) defines “summons” as including a “subpoena, order or other notice requiring the appearance of a witness.” (Emphasis added.) Because the ordinary meaning of “subpoena” includes both a subpoena ad testificandum and a subpoena duces tecum, see Black’s Law Dictionary 1467 (8th ed. 2004), we determine, as indicated in [Atlantic Commercial v. Boyles, 103 Nev. 35, 732 P.2d 1360 (1987), abrogated on other grounds by Executive Management v. Ticor Title Insurance Co., 118 Nev. 46, 38 P.3d 872 (2002)] that it is reasonable to extend NRS 174.425(1) to requests for material out-of-state books and records that have an ancillary request for the appearance of a witness.
Wyman v. State, 125 Nev. 592, 217 P.3d 572, 580-81 (2009) (footnote omitted). The Georgia Supreme Court more recently reached the same conclusion, holding that its Uniform Act applied to both witnesses and documents in the possession of witnesses. See Yeary, 711 S.E.2d at 696.[4]
In turning to Florida and its enactment of the Uniform Law, chapter 942 does not limit a subpoena to only a subpoena ad testificandum requiring a witness to testify. In fact, it defines “summons” as including “a subpoena, order, or other notice requiring the appearance of a witness.” § 942.01(3), Fla. Stat. (2010). As Black’s Law Dictionary makes clear, the ordinary meaning of the noun “subpoena” includes both a subpoena ad testificandum and a subpoena duces tecum and applies to any “writ or order commanding a person to appear before a court or other tribunal, subject to a penalty for failing to comply.” Black’s Law Dictionary 1563 (9th ed. 2009).
Based on the above, we hold that the procedures of the Uniform Law apply even when the subpoena involved is a subpoena duces tecum seeking a witness to only produce documents. This holding is consistent with the common usage of the term “subpoena” and with the interpretation of other states, which this Court considers when interpreting a statute modeled after a uniform law. It is also consistent with the meaning of the terms provided, in chapter 942.
Accordingly, we conclude that parties must follow the procedures of the Uniform Law when seeking to obtain documents located out-of-state from an out-of-state, *925 nonparty witness through a subpoena duces tecum, as well when seeking testimony or seeking both testimony and documents. Further, we note that if this Court were to hold that the Uniform Law did not apply to subpoenas directed to out-of-state witnesses possessing requested documents, there would be no other statutory or legal authority for a trial court to compel the production of documents from an out-of-state, nonparty witness. Our interpretation is thus consistent with the purpose of the Uniform Law to “facilitate criminal proceedings ... by utilizing the machinery of this reciprocal legislation to obtain” witnesses outside of the state’s boundaries. O’Neill, 359 U.S. at 9, 79 S.Ct. 564.
III. Application of the Uniform Law to This Case
In this case, the three subpoenas at issue were served on CMI’s registered agent in Florida and were directed to CMI’s records custodian, a person not located within the state of Florida, commanding the records custodian to appear personally in Florida at the attorneys’ offices or to produce all the source codes for the Intoxilyzer 8000 software, version 8100.27. The subpoenas also threatened the records custodian with contempt of court for that out-of-state witness’s failure to comply.
By limiting the subpoenas to apply solely to the production of these out-of-state materials belonging to an out-of-state, non-party corporate witness, the defendants attempted to circumvent the application of the Uniform Law and its threshold requirement of materiality by serving the subpoena on the corporate nonparty’s registered agent. Yet, the subpoena undeniably required the nonparty corporation to produce documents and materials that were located out-of-state through its records custodian, who was also located out-of-state. In other words, neither the documents nor the records custodian are located in Florida, and the defendants do not contend otherwise. Thus, as subpoenas issued in this state run only throughout the state, see § 914.001(1), Fla. Stat. (2010), the Fifth District properly quashed the portion of the circuit court’s order that denied CMI’s petition for a writ of certio-rari, since there was no authority for the subpoenas without utilizing the procedures of the Uniform Law.
CONCLUSION
In sum, we conclude that the issuance of the three subpoenas at issue in this case lacked any statutory authority to require the out-of-state records custodian to comply because the criminal defendants did not first follow the procedures required by the Uniform Law.[5] As explained herein, the provisions of chapter 607 governing registered agents cannot be invoked to obtain documents from a nonparty corporation, where the corporation and the requested documents or materials are located out-of-state. Further, pursuant to section 914.001(1), the authority to issue subpoenas to nonparty witnesses extends only to witnesses or documents located in this state. Lastly, the protections of the Uniform Law cannot be circumvented by the issuance of a subpoena duces tecum. Rather, the requirements of that law apply with equal force to subpoenas directed to witnesses required to testify, as well as *926 witnesses required to only produce documents.
Accordingly, we approve the Fifth District’s decision in Ulloa and disapprove the cases of General Motors and Landrum to the extent that they are inconsistent with our decision.[6]
It is so ordered.
POLSTON, C.J., and LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

. Nothing in the record shows that CMI has offices, employees, or documents in Florida. CMI admits in its brief filed in this Court that if it did have an employee in Florida, that employee could be personally served in Florida. Of course, this acknowledgment does not answer the question before us regarding how a criminal defendant can obtain out-of-state documents and materials from an out-of-state, nonparty corporation. Likewise, such a statement does not impact whether a subpoena properly served on an employee of a corporation would provide proper authority to require that corporation to produce out-of-state documents or material that has never been located in this state, which is not an issue before this Court.

. In addition, we stress that there is absolutely no indication in the record that CMI ever possessed the materials in Florida or that CMI was trying to evade the proper exercise of jurisdiction by the Florida courts.

. We disagree, however, with the Georgia Supreme Court’s apparent approval of the reasoning in the Second District's decision in Landrum that the presence of a registered agent would allow the documents to be produced by service on the registered agent. See Yeary, 711 S.E.2d at 697-98.

. For that reason, we do not address the constitutional implications raised by CMI if this Court were to have held that the subpoena power of the trial courts extends to compel corporate witnesses not located in Florida to testify or produce documents or materials in criminal cases where those witnesses are not a party.

. In General Motors, it is unclear whether General Motors was actually the subject of the investigation, which raises concerns not present in this case. The Third District stated, "A subpoena duces tecum issued by a Court, consequently, reaches all documents under the control of the party required to produce them, even if those documents are located outside the territorial jurisdiction of the court." Gen. Motors Corp., 357 So.2d at 1047 (emphasis added). To the extent that the facts of General Motors could be materially different if General Motors were the subject of a criminal investigation, the same considerations may not apply.