[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14325

_____

D.C. Docket No. 0:13-cv-62584-WPD

TAWANA CARMOUCHE,

Plaintiff-Appellant,

versus

TAMBORLEE MANAGEMENT, INC.,
d.b.a. Belize Paradise Ltd.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 15, 2015)

Before WILLIAM PRYOR, JULIE CARNES, and SILER,* Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

_____

* Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

This appeal requires us to decide whether the district court had general personal jurisdiction over Tamborlee Management, Inc., a Panama corporation that provides shore excursions for tourists in Belize. After Tawana Carmouche was injured during a shore excursion operated by Tamborlee in Belize, she sued Tamborlee for negligence in the Southern District of Florida. Tamborlee moved to dismiss Carmouche's complaint for lack of personal jurisdiction, and the district court granted the motion after allowing the parties to take jurisdictional discovery. Because Tamborlee's activities in Florida are not "so 'continuous and systematic' as to render [it] essentially at home" there, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. _, 131 S. Ct. 2846, 2851 (2011) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317, 66 S. Ct. 154, 159 (1945)), we affirm.

## I. BACKGROUND

In November 2012, Carmouche, a passenger on a cruise operated by Carnival Corporation, was injured during a shore excursion operated by Tamborlee in Belize. Carmouche sued Carnival and Tamborlee for negligence in the Southern District of Florida. Tamborlee moved to dismiss Carmouche's complaint for lack of personal jurisdiction, and the district court granted Carmouche leave to take jurisdictional discovery. After jurisdictional discovery, Tamborlee renewed its motion to dismiss for lack of personal jurisdiction.

2

Tamborlee is a corporation registered in Panama that provides shore excursions for tourists in Belize. Tamborlee has never operated a shore excursion in Florida, advertised to potential customers in Florida, or been incorporated or licensed to do business in Florida. Tamborlee's connections with Florida include insurance policies with several Florida companies, a bank account with Citibank that is handled by a department in Miami, and membership in the Florida Caribbean Cruise Association, a non-profit trade organization.

In 2005, Tamborlee entered into an agreement with Carnival Corporation to provide shore excursions for Carnival passengers in Belize. The initial contract between Tamborlee and Carnival provided that "[Tamborlee] consents to the personal jurisdiction over it and to the venue of the courts serving the Southern District of Florida in the event of any lawsuit to which CARNIVAL is a party and which is related to, in connection with, arising from or involving the Shore Excursion or the terms of this Agreement." The contract also listed a post-office box in Key West, Florida, as Tamborlee's "principal place of business." In December 2005, Tamborlee and Carnival executed a contract with the same terms as the initial contract, including the same forum-selection clause and the same Key West post-office box listed as Tamborlee's "principal place of business."

Also in 2005, Tamborlee filed a UCC financing statement with the Florida Secretary of State. The statement concerned the financing of a vessel named

3

"Belize Dream." One section of the statement lists a Belize mailing address for Tamborlee, but another section lists a Key West address next to Tamborlee's name. The Key West address listed on the financing statement is different from the Key West post-office box listed in the Carnival contracts.

Tamborlee filed a declaration of its co-founder, William Mackenzie, that the inclusion of the Key West post-office box in the contracts with Carnival was "entirely in error," that the address "has never belonged to or even been associated with Tamborlee, its owners, officers, representatives, agents or employees," that "Tamborlee has never used this P.O. Box for any purpose," and that the address "belonged to an entity which was owned or affiliated with" Peter Norquoy, an initial investor in Tamborlee. Mackenzie further asserted that the different Key West address listed in the 2005 financing statement never belonged to Tamborlee. Tamborlee also submitted insurance contracts, contracts with other cruise lines, and e-mails between employees of Tamborlee and Carnival that listed Panama and Belize addresses for Tamborlee.

The district court granted Tamborlee's motion to dismiss. Although "Tamborlee…presented evidence that the [Key West post-office box] was placed in the [Carnival] agreement in error," the district court concluded that even if it "were to accept that the Key West post[-]office box was a Tamborlee mailing address, this is insufficient support for personal jurisdiction."

4

## II. STANDARD OF REVIEW

We review *de novo* the decision of a district court to dismiss a complaint for lack of personal jurisdiction. *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010).

## III. DISCUSSION

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). A defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways: first, section 48.193(1)(a) lists acts that subject a defendant to *specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida, Fla. Stat. § 48.193(1)(a); and second, section 48.193(2) provides that Florida courts may exercise *general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida, *id*. § 48.193(2).

Because Carmouche does not argue that the events that gave rise to her suit confer specific personal jurisdiction over Tamborlee, we need only consider whether the district court had general jurisdiction over Tamborlee under section

5

48.193(2). And "[t]he reach of [section 48.193(2)] extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Fraser*, 594 F.3d at 846. So, to determine whether the district court had general jurisdiction over Tamborlee under section 48.193(2), we "need only determine whether the district court's exercise of jurisdiction over [Tamborlee] would exceed constitutional bounds." *Id.*

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations," without offending due process "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (quoting *Int'l Shoe Co.*, 326 U.S. at 317, 66 S. Ct. at 159). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. _, 134 S. Ct. 746, 760 (2014). A corporation's place of incorporation and its principal place of business are "paradigm all-purpose forums." *Id*. And "a corporation's operations in a forum other than its formal place of incorporation or principal place of business" will be "so substantial and of such a nature as to render the corporation at home in that State" only in "exceptional" cases. *Id*. at 761 n.19.

Tamborlee's connections with Florida are not "so 'continuous and systematic' as to render [it] essentially at home" there. *Goodyear*, 131 S. Ct. at

6

2851 (quoting *Int'l Shoe Co.*, 326 U.S. at 317, 66 S. Ct. at 159). If we accept all of Carmouche's allegations as true, Tamborlee's connections with Florida are limited to having a Florida bank account and two Florida addresses, one of which is a post-office box, purchasing insurance from Florida companies, filing a financing statement with the Florida Secretary of State, joining a non-profit trade organization based in Florida, and consenting to the jurisdiction of the Southern District of Florida for all lawsuits arising out of its agreements with Carnival. These connections are not "so substantial" as to make this one those "exceptional" cases in which a foreign corporation is "at home" in a forum other than its place of incorporation or principal place of business, *Daimler AG*, 134 S. Ct. at 761 n.19.

The only "exceptional" case the Supreme Court has identified in which a court exercised general personal jurisdiction over a foreign corporation without offending due process is *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 72 S. Ct. 413 (1952), but that decision is distinguishable. The defendant in *Perkins* was a Philippines mining company that ceased its mining operations during the Japanese occupation of the Philippines in World War II. *Id.*, 342 U.S. at 448, 72 S. Ct. at 419. The president of the company moved to Ohio, where he kept an office and oversaw the work of the company. *Id.* The Supreme Court held that Ohio courts could exercise general jurisdiction over the company without offending due process. *Id.* The Supreme Court later explained that in *Perkins*,

7

"Ohio was the corporation's principal, if temporary, place of business," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 n.11, 104 S. Ct. 1473, 1481 n.11 (1984), and that "[g]iven the wartime circumstances, Ohio could be considered a surrogate for the place of incorporation or head office," *Daimler AG*, 134 S. Ct. at 756 n.8 (internal quotation marks and citation omitted). This record does not suggest and Carmouche does not contend that Tamborlee ever established its principal place of business in Florida.

The Supreme Court has held that general personal jurisdiction was absent in similar circumstances. In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, the Supreme Court held that a Texas court could not exercise general personal jurisdiction over a Colombian corporation consistent with due process, even though the corporation had a bank account in New York that accepted checks drawn on a Houston bank, sent its chief executive officer to Texas to negotiate a contract, purchased eighty percent of its helicopter fleet from Texas, and sent personnel to Texas for training. 466 U.S. 408, 416, 104 S. Ct. 1868, 1873 (1984). And in *Daimler AG*, the Court held that California courts could not exercise general personal jurisdiction over a German company with a wholly-owned subsidiary that did business in California. 134 S. Ct. 746. The Court explained that California courts could not exercise general personal jurisdiction over the parent company even if the subsidiary's contacts with California were "imputable" to the

8

parent. *Id.* at 760. The Court reached this conclusion even though the company's subsidiary was the largest supplier of luxury vehicles to the California market and accounted for 2.4% of the parent's worldwide sales. *Id.* at 752.

We too have held that general personal jurisdiction was absent in a similar circumstance. In *Fraser*, this Court held that Florida courts could not exercise general personal jurisdiction over a commercial tour operator organized under the laws of the Turks and Caicos Islands. 594 F.3d at 844, 847. We reached this conclusion even though the tour operator maintained a website accessible from Florida, advertised in several publications circulated in the United States, including the Miami Herald, procured liability insurance through a Florida insurance agent, purchased about half of its boats in Florida, and sent employees and representatives to Florida for training and to promote its services. *Id.* at 844–45.

Carmouche is not a party to the agreements between Tamborlee and Carnival, and she does not attempt to enforce the forum-selection clauses in those agreements as a third-party beneficiary. Carmouche instead argues that the forum-selection clauses represent a connection Tamborlee has with Florida that we must consider in our jurisdictional analysis. But we are unpersuaded that Tamborlee's contracts with Carnival are sufficient to subject it to general personal jurisdiction in Florida.

9

A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business. And Tamborlee's activities in Florida do not satisfy that standard. Carmouche has produced no evidence that any office Tamborlee might have had in Florida played a significant role in its operations. And Tamborlee's remaining activities in Florida are not meaningfully different from the activities of the defendants in *Helicopteros*, *Daimler AG*, and *Fraser*. Accordingly, the district court did not have general personal jurisdiction over Tamborlee.

## IV. CONCLUSION

We **AFFIRM** the order of the district court dismissing Carmouche's complaint for lack of personal jurisdiction.