[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15569
_____

D.C. Docket No. 0:15-cv-62359-BB


JAMES JOHN WAITE, JR.,

                                                                    Plaintiff,

SANDRA WAITE, in her capacity as
the personal representative of the estate of John Waite, Jr.,

                                                                    Plaintiff - Appellant,

                              versus


AII ACQUISITION CORP.,
f.k.a. Holland Furnace,
a.k.a. Allegheny Technologies,
FORD MOTOR COMPANY,
UNION CARBIDE CORPORATION,

                                                                    Defendants - Appellees,

BORG-WARNER CORPORATION, et al.,

                                                                    Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 23, 2018)

Before JILL PRYOR and JULIE CARNES, Circuit Judges, and ANTOON,[*] District Judge.

JILL PRYOR, Circuit Judge:

While living in Massachusetts, James Waite was exposed repeatedly to asbestos, some of which was mined and sold by Union Carbide Corporation.  More than twenty-five years after his initial asbestos exposure, Mr. Waite moved to Florida, where he was diagnosed with mesothelioma.  Mr. Waite and his wife, Sandra Waite, filed a lawsuit in Florida state court against a group of defendants that included Union Carbide.  The Waites alleged that the defendants negligently failed to warn users of the health hazards of asbestos and defectively designed their products.  After Union Carbide removed the case to federal district court, the district court determined that it lacked personal jurisdiction over Union Carbide.

On appeal, the Waites argue that the district court erred in dismissing Union Carbide for lack of personal jurisdiction because the court properly could exercise both specific jurisdiction and general jurisdiction over Union Carbide.  We

_____

[*] Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

2

disagree. Union Carbide is not subject to specific jurisdiction because the Waites cannot show that their claims arise out of Union Carbide's contacts with Florida. Nor is Union Carbide subject to general jurisdiction because there is no evidence that Union Carbide is at home in Florida. After careful consideration, and with the benefit of oral argument, we affirm the district court's order dismissing Union Carbide for lack of personal jurisdiction.

## I.    BACKGROUND

The basic facts of this case are undisputed.

For much of his life, Mr. Waite lived in Massachusetts, where he worked at several jobs that exposed him to asbestos. When renovating apartment units in the late 1960s, he was exposed to a joint compound that contained asbestos mined and sold by Union Carbide. Union Carbide never warned Mr. Waite about the hazards of exposure to asbestos. In 1978, Mr. Waite moved to Florida. There, he continued to be exposed to asbestos while working with automotive parts. The Waites do not contend, however, that the asbestos to which he was exposed in Florida was mined or sold by Union Carbide.

In 2015, Mr. Waite was diagnosed with malignant mesothelioma, a rare, fatal cancer, the only known environmental cause of which is exposure to asbestos. Exposure to asbestos can cause genetic errors in cells lining the lungs, known as mesothelial cells. When these mutations accumulate, uncontrolled cell growth can

3

lead to a deadly tumor.  Repeated exposure to asbestos increases the risk of contracting mesothelioma; it is impossible to exclude any particular exposure from the causal chain leading to development of the disease.  The disease's cumulative nature also results in long latency periods between a patient's first exposure to asbestos and the disease's presentation, sometimes spanning several decades.  Mr. Waite's medical treatment, including his surgery, radiation, and chemotherapy, all has taken place in Florida.

Following Mr. Waite's diagnosis with mesothelioma, the Waites filed suit in Florida state court against Union Carbide and nine other defendants.[1]  Alleging that each defendant had mined, processed, supplied, manufactured, or distributed products containing asbestos that caused Mr. Waite's disease, the Waites asserted claims for negligent failure to warn and strict liability for defective design.  Union Carbide removed the case to the United States District Court for the Southern District of Florida.

In district court, Union Carbide filed a motion to dismiss for lack of personal jurisdiction on the ground that Union Carbide was incorporated in New York and maintained its principal place of business in Texas.  In response, the Waites relied on evidence that revealed the following about Union Carbide's business activities in Florida:  Union Carbide registered for the right to conduct business in Florida in

---

[1] The remaining nine defendants have been dismissed from this case.

1949 and maintains a registered agent to receive service of process in the state. It began selling asbestos in 1963 to product manufacturers. During the 1960s, it made plans to build and operate a shipping terminal in Tampa. By 1973, Union Carbide sold about 50% of the asbestos used in joint compounds nationwide and had hired a distributor in Florida to sell its asbestos. Union Carbide had asbestos customers based in Florida, and it operated a plant in Brevard County, Florida. When the public increasingly became concerned about the health consequences of exposure to asbestos, Union Carbide discussed undertaking a public relations campaign that would include a seminar in Florida. The Waites also offered evidence that Union Carbide has been sued by other plaintiffs in Florida, including in asbestos-related cases, and has itself brought lawsuits in Florida.

After considering this evidence, the district court initially denied Union Carbide's motion to dismiss for lack of personal jurisdiction, determining that Florida courts could assert general jurisdiction over the company. Upon Union Carbide's motion for reconsideration, the district court concluded that it lacked general jurisdiction over Union Carbide, but that the company was subject to specific jurisdiction. Following a second motion for reconsideration, the district court concluded that it lacked both general and specific jurisdiction over Union Carbide. The Waites appealed.

5

## II.    STANDARD OF REVIEW

We review *de novo* the decision of a district court to dismiss a complaint for lack of personal jurisdiction.  *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015).

## III.    DISCUSSION

A federal court sitting in diversity undertakes a two-step inquiry to determine whether personal jurisdiction exists.  *Carmouche*, 789 F.3d at 1203.  First, the exercise of jurisdiction must be appropriate under the forum state's long-arm statute, which delimits the exercise of personal jurisdiction under state law.  *Id.*  Second, the exercise of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment.  *Id.*

Florida's long-arm statute provides two ways in which a defendant may be subject to the jurisdiction of the state's courts.  *Id.* at 1203-04.  First, a defendant is subject to "*specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida"—for conduct specifically enumerated in the statute.  *Id.* at 1204 (citing Fla. Stat. § 48.193(1)(a)).  Second, a defendant is subject to "*general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in

6

Florida—if the defendant engages in 'substantial and not isolated activity' in Florida." *Id.* (quoting Fla. Stat. § 48.193(2)).

Whether specific or general, the exercise of personal jurisdiction over a defendant must comport with due process. The touchstone of this analysis is whether the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The minimum contacts inquiry focuses on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks omitted). This inquiry ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the "random, fortuitous, or attenuated" contacts it makes by interacting with other persons affiliated with the state. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Even where neither the forum state's long-arm statute nor the due process minimum contacts analysis is satisfied, a court may exercise personal jurisdiction over a party if the party consents. "[A] litigant may give express or implied consent to the personal jurisdiction of the court." *Burger King Corp.*, 471 U.S. at 472 n.14 (internal quotation marks omitted). Parties may, for example, contract or stipulate "to submit their controversies for resolution within a particular

7

jurisdiction." *Id.*; *see, e.g.*, *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964) (consent by contract); *Petrowski v. Hawkeye-Sec. Ins. Co.*, 350 U.S. 495, 495-96 (1956) (per curiam) (consent by stipulation).  Where these agreements are "freely negotiated" and not "unreasonable [or] unjust," their enforcement does not offend due process.  *Burger King Corp.*, 471 U.S. at 472 n.14 (internal quotation marks omitted).

The Waites argue that there are three ways in which the district court could properly exercise personal jurisdiction over Union Carbide in this case.  First, they argue that the exercise of specific jurisdiction is appropriate based on Union Carbide's activities in Florida that gave rise to the causes of action they allege.  Second, they argue that the district court could exercise general jurisdiction over Union Carbide based on the company's substantial contacts with Florida.  Third, they argue that Union Carbide consented to general personal jurisdiction in Florida by complying with various Florida statutes governing foreign businesses.  We consider each of these arguments in turn.

## A.    The District Court Properly Determined that Exercising Specific Jurisdiction Over Union Carbide Would Violate Due Process.

With respect to specific personal jurisdiction, the district court initially determined that such jurisdiction was appropriate under both the Florida long-arm statute and the dictates of due process.  Upon reconsideration of its order as to specific jurisdiction, the district court left undisturbed its determination that the

8

exercise of jurisdiction comported with the state's long-arm statute, but it decided that due process had not been satisfied. Because we agree with the district court that exercising specific jurisdiction over Union Carbide would not comport with due process, we do not address whether the requirements of Florida's long-arm statute would be met.

To determine whether the exercise of specific jurisdiction affords due process, we apply a three-part test. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). First, we consider whether the plaintiffs have established that their claims "arise out of or relate to" at least one of the defendant's contacts with the forum. *Id*. (internal quotation marks omitted). Second, we ask whether the plaintiffs have demonstrated that the defendant "purposefully availed" itself of the privilege of conducting activities within the forum state. *Id.* (internal quotation marks omitted). If the plaintiffs carry their burden of establishing the first two prongs, we next consider whether the defendant has "ma[de] a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted). We agree with the district court that specific jurisdiction is

9

lacking here because the Waites failed to establish that their claims arise out of or relate to Union Carbide's contacts in Florida.[2]

1.      *Union Carbide's Contacts with Florida Must Be a But-For Cause of the Torts the Waites Allege.*

Applying the first prong of the three-part test, we must decide whether the Waites' claims arise out of or relate to one of Union Carbide's contacts with Florida.  To do so, we look to the "affiliation between the forum and the underlying controversy," focusing on any "activity or . . . occurrence that [took] place in the forum State."  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  In the absence of such a connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Id.* at 1781.  In this Circuit, we have held that a tort "arise[s] out of or relate[s] to" the defendant's activity in a state only if the activity is a "but-for" cause of the tort.  *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222-23 (11th Cir. 2009) (internal quotation marks omitted).  In *Fraser v. Smith*, 594 F.3d 842, 844 (11th Cir. 2010), for example, Fraser was aboard a boat in the Turks and Caicos Islands when it exploded, killing Fraser and injuring his

---

[2] Because we conclude that the plaintiffs' claims do not arise out of or relate to at least one of Union Carbide's contacts with Florida, we need not address whether Union Carbide purposefully availed itself of the privilege of conducting activities in Florida or whether the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.

family members. Fraser's estate and family members filed suit against the boat's operator in Florida, alleging that there was personal jurisdiction over the defendant because it maintained a website accessible in Florida; advertised in the United States, including in the Miami Herald; purchased boats in Florida; and sent its employees to Florida for a training course. *Id.* at 844-45. In reviewing whether the district court could exercise specific personal jurisdiction over the corporation, we concluded that some of the defendant's Florida contacts, including its advertisements in Florida and its website, were irrelevant because the plaintiffs had not viewed them; thus, those contacts or activities "[could not] reasonably be construed as but-for causes of the accident." *Id.* at 850.

The Waites argue that a but-for causal relationship between the defendant's contacts and the tortious conduct is unnecessary because the Supreme Court has never imposed such a requirement. In support of their argument, the Waites point to two Supreme Court cases addressing specific jurisdiction.

In the first case, *Walden*, two passengers filed a lawsuit in Nevada against a law enforcement officer who stopped them in the airport in Atlanta and seized from them nearly $100,000 in cash. 571 U.S. at 279-80. The passengers sued based on *Bivens v. Six Unknown Federal Agents*, 403 U.S. 388 (1971), alleging that the officer seized the property without probable cause. *Walden*, 571 U.S. at 281. The Supreme Court held that specific jurisdiction over the defendant officer

11

was lacking because the officer did not have the requisite minimum contacts with Nevada. *Id.* at 288. The officer had approached, questioned, and searched the passengers and seized their cash in Georgia, not Nevada. *Id.* Although the officer knew that the passengers were en route to Nevada, the Court concluded that the officer's actions in Georgia "did not create sufficient contacts with Nevada simply because [the officer] allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* at 289.

In the second case, *Bristol-Myers Squibb*, a group of plaintiffs, including many with no connection to California, filed a tort action in California state court seeking damages from injuries caused by a drug the defendant manufactured. 137 S. Ct. at 1778. The Court held that exercising personal jurisdiction over the drug manufacturer as to those claims brought by the non-resident plaintiffs violated due process because there was no "connection between the forum and the [non-residents'] specific claims." *Id.* at 1781.

We agree with the Waites that the Supreme Court imposed no explicit but-for causation requirement in either *Walden* or *Bristol-Myers Squibb*. But neither did the Supreme Court reject such a requirement, nor is either opinion inconsistent with one. To the extent these intervening Supreme Court opinions may cast doubt upon our prior panel precedent through their silence regarding a but-for causation requirement, "we are not at liberty to disregard binding case law that is so closely

12

on point and has been only weakened, rather than directly overruled, by the Supreme Court." *Fla. League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 462 (11th Cir. 1996).  We are thus bound to apply the but-for causation requirement from *Oldfield* and *Fraser*, and we do so below.[3]

> 2.    *Union Carbide's Conduct in Florida Was Not a But-For Cause of the Waites' Claims.*

The Waites cannot establish that their claims arise out of or relate to Union Carbide's contacts in Florida because none of those contacts is a but-for cause of the torts the Waites allege.  Their complaint alleges that Union Carbide: negligently failed to warn its users of the dangers of asbestos, defectively designed its products, and failed to use reasonable care in distributing its products.  But the contacts upon which the Waites rely to establish specific jurisdiction—Union Carbide's discussion about holding a seminar in Florida, its plant in Brevard County, and its sales in Florida—have nothing to do with the torts Union Carbide

---

[3] We note that the Due Process Clause of the Fourteenth Amendment applies to the exercise of specific jurisdiction in this case, but both *Oldfield* and *Fraser* considered whether specific jurisdiction was appropriate under Federal Rule of Civil Procedure 4(k)(2), governed by the Due Process Clause of the *Fifth* Amendment.  As we explained in *Oldfield*, however, the "language and policy considerations of the Due Process Clauses of the Fifth and Fourteenth Amendments are virtually identical."  558 F.3d at 1219 n.25.  Furthermore, the Waites do not argue that the Fifth and the Fourteenth Amendments should be interpreted differently in this context.  We therefore assume, without deciding, that this Circuit's but-for causation requirement applies equally to cases involving the Fourteenth Amendment, leaving for another case the question the Supreme Court left open in *Bristol-Myers Squibb*, "whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court" as does the Fourteenth Amendment.  137 S. Ct. at 1784.

allegedly committed.  The Waites do not allege, for example, that the asbestos to which Mr. Waite was exposed in Massachusetts was designed at the Brevard County plant.  There is no allegation that the seminar Union Carbide discussed in 1975 contributed to its failure to warn Mr. Waite prior to his exposure in Massachusetts—which had occurred more than a decade earlier—or its continuing failure to warn him when he moved to Florida in 1978.  And the Waites do not allege that Mr. Waite was ever exposed to any of Union Carbide's asbestos in Florida.  They thus fall short of establishing that Union Carbide's contacts were the but-for cause of the torts they allege, which is fatal to the district court's exercise of specific personal jurisdiction.

The Waites nevertheless argue that personal jurisdiction obtains in Florida because mesothelioma develops slowly, and so they did not suffer any legal injury until they arrived in Florida, where Mr. Waite was diagnosed.  Mr. Waite's diagnosis, they argue, provides the necessary link between the forum state and the tortious conduct.  But even accepting that Mr. Waite's legal injury occurred in Florida because he was diagnosed there, the Supreme Court has rejected attempts to establish personal jurisdiction based solely on a plaintiff's injury in the forum. In *Walden*, the defendant law enforcement officer allegedly submitted a false affidavit to justify unlawfully seizing and continuing to withhold funds from the plaintiffs, whom he knew lived in Nevada.  571 U.S. at 280-81.  The Supreme

14

Court expressly rejected the plaintiffs' argument—the same one the Waites make here—that the injury they suffered in the forum state supplied the district court with specific jurisdiction. "[M]ere injury to a forum resident," the Supreme Court explained, "is not a sufficient connection to the forum." *Id.* at 290. Instead, the location of a plaintiff's injury "is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* But, as in *Walden*, Mr. Waite's injury occurred in Florida only because of *his* contacts with the forum, namely, his choice to move there, rather than any contacts made by Union Carbide.

The Waites also argue that Union Carbide had an ongoing duty to warn Mr. Waite of the threat of harm from asbestos that continued after he moved to Florida. Following Mr. Waite's exposure to Union Carbide's asbestos in Massachusetts, they argue, Union Carbide was obligated to warn him that he should avoid future exposure. Thus, they say, the tortious conduct occurred in Florida as well as in Massachusetts. But even assuming that Union Carbide had a continuing duty to warn after Mr. Waite's exposure to Union Carbide's asbestos in Massachusetts, the failure to do so cannot be the basis for specific jurisdiction because such a result would impermissibly allow the plaintiffs' choices—rather than the defendant's contacts—"to drive the jurisdictional analysis." *Id.* at 289. Instead, our analysis must focus on those contacts the "defendant [itself] creates with the forum State,"

15

not the plaintiffs' contacts with the forum or even the defendant's contacts with the plaintiffs. *Id.* at 284 (internal quotation marks omitted).

Accepting the Waites' argument would mean that Union Carbide would have failed to warn Mr. Waite "in California, Mississippi, or wherever else [he] might have traveled," like the passengers in *Walden*. *Id.* at 290. Union Carbide's alleged failure to warn occurred in Florida "not because anything independently occurred there, but because [Florida] is where [the Waites] chose to be." *Id.* "[W]hen viewed through the proper lens—whether the *defendant's* actions connect [it] to the *forum*," Union Carbide has formed "no jurisdictionally relevant contacts" with Florida. *Id.* at 289. We thus agree with the district court that the exercise of specific jurisdiction over Union Carbide would violate due process.

## B.    The District Court Properly Determined that Exercising General Jurisdiction Over Union Carbide Would Violate Due Process.

Having decided that exercising specific jurisdiction over Union Carbide would violate due process, we now consider whether the district court could properly exercise general jurisdiction over Union Carbide. Because Florida's long-arm provision "extends to the limits on personal jurisdiction imposed by the Due Process Clause," we "need only determine whether the district court's exercise of jurisdiction over [Union Carbide] would exceed constitutional bounds." *Carmouche*, 789 F.3d at 1204 (internal quotation marks omitted).

16

The Waites make two arguments for the exercise of general jurisdiction. First, they argue that because Union Carbide registered to conduct business in Florida and conducted "ongoing intrastate business there," due process is satisfied. Appellants' Br. at 56. Second, they argue that regardless of whether Union Carbide's contacts with Florida permit the state's courts to exercise general jurisdiction, Union Carbide consented to Florida courts' general jurisdiction by complying with certain Florida statutes governing foreign businesses. Below we address each of these arguments.

     *1.     Union Carbide Is Not "At Home" in Florida.*

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations," without offending due process "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (quoting *Int'l. Shoe Co.*, 326 U.S. at 317). But, as the Supreme Court recently reiterated in *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), "only a limited set of affiliations with a forum" will render a defendant at home there. The "paradigm all-purpose forums" in which a corporation is at home are the corporation's place of incorporation and its principal place of business. *Id.* Outside of these two exemplars, a defendant's operations will "be so substantial and of such a nature as to render the corporation at home in

17

that State" only in an "exceptional case." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (internal quotation marks omitted).

The facts of *Daimler* illustrate the heavy burden of establishing such an exceptional case. There, the Court held that Daimler, a German corporation, was not subject to general jurisdiction in California based on the California contacts of Daimler's subsidiary, Mercedes–Benz USA ("MBUSA"). *Daimler*, 571 U.S. at 136. The "paradigm all-purpose forums" did not apply: Daimler was neither incorporated, nor did it maintain its principal place of business, in California. *Id.* at 137-39. Still, MBUSA had multiple facilities in California and was "the largest supplier of luxury vehicles to the California market," which accounted for more than two percent of Daimler's worldwide sales. *Id.* at 123. Assuming that MBUSA would be subject to general jurisdiction in California and that its California contacts could be imputed to Daimler, the Supreme Court nonetheless held that Daimler's contacts with California did not render it at home in the state, and thus the district court could not exercise general jurisdiction over it. *Id.* at 139.

In rejecting the exercise of general jurisdiction over Daimler, the Supreme Court offered an example of an "exceptional case" in which general jurisdiction might be appropriate outside of one of the paradigm forums. *Id.* at 139 n.19. In that case, *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), the defendant operated a mining company based in the Philippines. Because of the

18

Japanese occupation of the Philippines during World War II, the company temporarily moved its principal place of business to Ohio, where it was sued. *Id*. at 447-48. Because Ohio was "a surrogate for the place of incorporation or head office"—the company's president had moved to Ohio, where he kept an office— the Supreme Court held that the Ohio court's exercise of personal jurisdiction did not offend due process. *Daimler*, 571 U.S. at 130 n.8 (internal quotation marks omitted).

Against this backdrop, we must determine whether Union Carbide may be regarded as at home in Florida. As in *Daimler*, neither of the paradigms apply here: Union Carbide is incorporated in New York, and its principal place of business is in Texas. Our task, then, is to decide whether this is one of the exceptional cases in which a federal court's exercise of general jurisdiction may be proper outside of the paradigm places where a corporation is at home. To make this decision, we must consider whether "the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche*, 789 F.3d at 1205 (holding that there was no general jurisdiction in Florida despite the defendant's bank account, address, and post office box in Florida, along with its purchase of insurance in Florida, filing of a financing statement in Florida, and membership in a Florida-based non-profit trade organization).

The Waites argue that Union Carbide is at home in Florida based on the following contacts:  Union Carbide had a distributor in Florida, along with several Florida customers.  It once discussed holding a seminar in Florida to combat the public's concerns about the health effects of asbestos.  It registered to do business in Florida in 1949, and it maintains an agent to receive service of process there.  As for its physical presence, Union Carbide built a plant in the state and discussed building a shipping terminal there.  We disagree with the Waites that these activities establish that Union Carbide was at home in Florida.  Unlike in *Perkins*, Florida was not "a surrogate" place of incorporation or principal place of business for Union Carbide; the Waites do not allege that Union Carbide's leadership was based in Florida or that the company otherwise directed its operations from Florida.  *See Daimler*, 571 U.S. at 130 n.8.  At most, Union Carbide's activities show that it conducted significant business in Florida.  But *Daimler* tells us that even "substantial, continuous, and systematic" business is insufficient to make a company "at home" in the state.  *Id.* at 138 (internal quotation marks omitted).

We also reject the Waites' argument that Union Carbide's registration to do business and its maintenance of an agent for service of process in Florida render Union Carbide at home there.  Even before the Supreme Court's decision in *Daimler*, this Court held that a defendant's appointment of an agent for service of process in a state did not confer general jurisdiction over a defendant there.  *See*

20

*Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) ("The casual presence of a corporate agent in the forum is not enough to subject the corporation to suit where the cause of action is unrelated to the agent's activities."); *see also Perkins*, 342 U.S. at 445 ("The corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test."). After *Daimler*, there is "little room" to argue that compliance with a state's "bureaucratic measures" render a corporation at home in a state. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629, 639 (2d Cir. 2016).

Because Union Carbide's contacts in Florida do not "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business," we conclude that the exercise of general jurisdiction over Union Carbide in Florida would violate due process. *Carmouche*, 789 F.3d at 1205.

2.    *Florida's Business Registration Scheme Does Not Establish that Union Carbide Consented to Florida Courts' General Jurisdiction.*

Lastly, the Waites argue that even if Union Carbide's contacts with Florida do not subject it to general jurisdiction, the company consented to the Florida courts' general jurisdiction when it registered to do business and appointed an agent to receive service of process in Florida. Again, we are unpersuaded. The

21

Waites offer no authority establishing that by complying with Florida's registration scheme for foreign businesses, a corporation consents to jurisdiction in Florida for any purpose. Given the lack of authority to support the Waites' position, we reject the exercise of general personal jurisdiction based on such implied consent.

To establish that Union Carbide consented to general jurisdiction in Florida, the Waites rely on the Supreme Court's 1917 decision in *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917). In that case, the Supreme Court considered for the first time whether state law could establish a foreign defendant's consent to general jurisdiction. There, the defendant insurer was sued in Missouri, where it had complied with a state law requiring it to obtain a business license and execute a power of attorney agreeing that service on its representative was the equivalent of personal service. *Id.* at 94. Noting that the defendant had "appoint[ed] an agent in language that rationally might be held to" subject it to personal jurisdiction for any and all suits and that this "language [had] been held to go to that length" by Missouri's highest court, the Supreme Court held the defendant could be haled into Missouri court for suits arising out of its activities in Missouri and elsewhere. *Id.* at 95-97. The Court rejected the defendant's argument that the Missouri court's exercise of personal jurisdiction was inconsistent with due process, explaining that the insurer had

22

"take[n] the risk of the interpretation that may be put upon [the document] by the courts." *Id.* at 96.

The Court considered a similar issue a few years later in *Robert Mitchell Furniture Co. v. Selden Breck Construction Co.*, 257 U.S. 213 (1921). There, the defendant, a building contractor, conducted limited business in Ohio and completed its work there months before the lawsuit was filed. *Id.* at 215. The corporation had, however, retained an agent for service of process in Ohio pursuant to an Ohio statute. *Id.* It was sued in Ohio for failure to deliver woodwork for a building in Michigan. *Id.* at 214. The Court concluded that the company was not subject to personal jurisdiction in Ohio despite having designated an agent for service of process there. *Id.* at 216. The Court explained that

> [u]nless the state law [requiring appointment of an agent] either expressly or by local construction gives to the appointment a larger scope, we should not construe it to extend to suits in respect of business transacted by the foreign corporation elsewhere, at least if begun, as this was, when the long previous appointment of the agent is the only ground for imputing to the defendant an even technical presence.

*Id.* Together, *Pennsylvania Fire* and *Robert Mitchell Furniture Co.* thus establish that whether appointing an agent for service of process subjects a foreign defendant to general personal jurisdiction in the forum depends upon the state statutory language and state court decisions interpreting it.

23

To determine whether Union Carbide consented to general jurisdiction, we thus begin by looking at Florida law.  The Waites argue that a number of statutory provisions establish Union Carbide's consent to general jurisdiction.  First, they point to Florida's statutory scheme governing service on foreign corporations.  Florida Statutes § 48.091 requires every foreign corporation that transacts business in Florida to "designate a registered agent and registered office in accordance with part I of chapter 607."  Florida Statutes § 607.15101(1) in turn provides that a foreign corporation's registered agent "is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the foreign corporation."  Finally, Florida Statutes § 48.081 provides that "process may be served on the agent designated by the corporation under § 48.091."

Turning first to the text of the statutes, nothing in these provisions' plain language indicates that a foreign corporation that has appointed an agent to receive service of process consents to general jurisdiction in Florida.  *See Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1279 (11th Cir. 2015) (explaining that to discover the Florida legislature's intent, "we first examine the statute's plain language" (citing *Atwater v. Kortum*, 95 So. 3d 85, 90 (Fla. 2012))).  Indeed, "consent" and "personal jurisdiction" are never mentioned in the provisions the Waites cite.  Instead, these provisions simply require foreign corporations to maintain an agent to receive service of process and to allow complaining parties to serve documents

24

upon that agent.  Nothing in these provisions would alert a corporation that its compliance would be construed as consent to answer in Florida's courts for any purpose.

The Waites argue that *White v. Pepsico*, 568 So. 2d 886 (Fla. 1990), a 1990 Florida Supreme Court case, shows that these statutes establish a defendant's consent to personal jurisdiction.  In that case, the plaintiff opened a bottle of Pepsi in Jamaica when it exploded, striking his eye and causing permanent blindness. *White v. Pepsico, Inc.*, 866 F.2d 1325, 1326 (11th Cir. 1989).  White sued Pepsico in Florida, and the complaint was served on Pepsico's registered agent in Florida. *Id.*  The federal district court determined that it lacked personal jurisdiction over Pepsico, and White appealed to this Court, which certified a question to the Florida Supreme Court. *Id.*  We asked the Florida Supreme Court to determine whether serving a corporation's registered agent in compliance with Florida Statutes §§ 48.081 and 48.091 "conferred upon a court personal jurisdiction over [the] foreign corporation without a showing that a connection existed between the cause of action and the corporation's activities in Florida." *Id*.

The Florida Supreme Court answered that question in the affirmative, holding that its courts could exercise personal jurisdiction over the defendant after personal service had been effected on the corporation's agent. *White*, 568 So. 2d at 887.  Without using the word "consent," the Court commented that a defendant

25

"submitted itself to the jurisdiction of Florida courts" by "acknowledg[ing] that it did sufficient business in Florida to make it amenable to suit and service of process [in the state]." *Id.* at 889. Despite this broad language in *White*, however, more recent decisions of Florida's appellate courts suggest that *White* should be read more narrowly.

From our review of Florida case law, it appears that only one reported case directly addressed the consent argument the Waites make here. In that case, *Magwitch, LLC v. Pusser's West Indies, Ltd.*, 200 So. 3d 216, 218-19 (Fla. Ct. App. 2016), an appellate court rejected the argument that the defendant had consented to the Florida courts' general jurisdiction by registering to do business in the state and appointing an agent there. Considering whether *White* established the defendant's consent to general jurisdiction, the Second District Court of Appeals explained that *White* was "inapposite because it addressed the sufficiency of service of process . . . not personal jurisdiction." *Id.* (internal quotation marks omitted).

*Magwitch* is not inconsistent with a Florida Supreme Court decision handed down a few years earlier than *Magwitch* but long after *White*. In *Ulloa v. CMI, Inc.*, 133 So. 3d 914, 915 (2013), the Florida Supreme Court considered whether a party could compel a non-party, out-of-state corporation to produce documents by serving the corporation's registered agent in Florida. The party seeking to compel

26

production, Ulloa,[4] argued that by maintaining an agent in compliance with Florida's business registration provisions the out-of-state corporation could be compelled by subpoena to produce documents.  The Court disagreed.  It explained that §§ 48.091, 48.081, and 607.15101—the same statutes the Waites rely on here—"simply requir[e] an out-of-state corporation doing business in this state to have a designated person or entity authorized to accept the delivery of a summons [or] complaint."  *Id.* at 919.

In rejecting Ulloa's argument, the Court distinguished between service of process and personal jurisdiction, explaining that they are "different but related legal concept[s]."  *Id.*  Service of process "is the means of notifying a party of a legal claim and, when accomplished, enables the court to exercise jurisdiction over the defendant and proceed to judgment."  *Id.* at 920 (internal quotation marks omitted).  Personal jurisdiction, by contrast, "refers to whether the actions of an individual or business entity as set forth in the applicable statutes permit the court to exercise jurisdiction in a lawsuit brought against [the defendant]."  *Id.* at 919 (internal quotation marks omitted).  In distinguishing between personal jurisdiction and service of process, the Court's description in *Ulloa* of the statutory scheme

---

[4] *Ulloa* was a consolidated appeal involving three criminal defendants who sought to compel the same out-of-state corporation to produce documents that they planned to use in moving to suppress certain evidence.  *See Ulloa*, 133 So. 3d at 916-18.  For ease of discussion, we will refer to only one of those defendants, Ulloa.

27

supports the meaning evident from the statutes' plain text:  §§ 48.081, 48.091, and 607.15101 "are directed *only* to service of process."  *Id.* (emphasis added).  The Court reached this conclusion despite including a quotation that cited *White* in its discussion of service of process and personal jurisdiction.

The Waites also point to a Florida statute that the Florida courts did not consider in *White*, *Ulloa*, or *Magwitch*.  Section 607.1505 authorizes a foreign corporation with a certificate of authority to transact business in Florida.  It also provides:

> A foreign corporation with a valid certificate of authority has the same but no greater rights and has the same but no greater privileges as, and . . . is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character.

Fla. Stat. § 607.1505(2).  In the Waites' view, by imposing "the same duties, restrictions, penalties, and liabilities" on registered foreign corporations, Florida law indicates that a foreign corporation consents to general jurisdiction in Florida when it registers to do business there.  But the text of § 607.1505(2) simply does not say that—and, from our review, it does not appear that any Florida court has ever ascribed such a meaning to § 607.1505(2).

The Waites thus have failed to convince us that Florida law "either expressly or by local construction" establishes that a foreign corporation's registration to do business and appointment of an agent for service of process in Florida amounts to its consent to general jurisdiction in the Florida courts.  *See Robert Mitchell*, 257

28

U.S. at 216.  Unlike in *Pennsylvania Fire*, where the Supreme Court held that a state statutory scheme could establish a defendant's consent to personal jurisdiction, neither the text of the Florida statutes nor the Florida case law construing them can "rationally . . . be held" as establishing Union Carbide's agreement to answer in Florida's courts for any purpose.  243 U.S. at 95.  We thus reject the Waites' argument that the district court could exercise general jurisdiction on that basis.[5]

## IV.    CONCLUSION

We affirm the order of the district court dismissing the Waites' complaint against Union Carbide for lack of personal jurisdiction.

**AFFIRMED**.

---

[5] We note that some courts, including the Second Circuit, have questioned the continuing validity of *Pennsylvania Fire* insofar as it supports a "sweeping interpretation that a state court gave to a routine registration statute and an accompanying power of attorney . . . as . . . general consent."  *Brown*, 814 F.3d at 639 (internal quotation marks omitted).  The Second Circuit commented that *Pennsylvania Fire* "has yielded" to the Supreme Court's approach in its more recent personal jurisdiction opinions, including *Daimler*, which acknowledge "the continuing expansion of interstate and global business."  *Id.*  Because we conclude that the Florida business registration statute did not require Union Carbide to consent to general jurisdiction in Florida, we need not determine whether *Pennsylvania Fire* has been implicitly overruled by the Supreme Court.  We note, however, that our conclusion as to Florida law is reinforced by our concerns that an overly broad interpretation of Florida's registration scheme as providing consent might be inconsistent with the Supreme Court's decision in *Daimler*, which cautioned against "exorbitant exercises" of general jurisdiction.  *Daimler*, 571 U.S. at 139.